* * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Penn National Insurance Company is the carrier on risk.
4. Plaintiff sustained a compensable injury by accident, a hernia injury, arising out of and in the course of his employment with defendant-employer.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1-A and 1-B.
6. Industrial Commission forms and filings were stipulated into evidence as Stipulated Exhibit 2.
7. The depositions of Ted Kunstling, M.D., Gregory Scott Pape, M.D., David A. Schwartz, M.D., Joseph McCabe, D.O. and Anita Buck, R.N. were received and admitted into evidence.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner of this matter, plaintiff was forty-four (44) years old and had not completed high school. Plaintiff was married and had *Page 3 
one (1) child. Plaintiff previously served as a machinist in the United States Navy and was employed as an auto mechanic for more than ten (10) years with defendant-employer where his responsibilities included car repair and maintenance, service station attendant and tow truck driver.
2. Plaintiff worked forty (40) hours per week at a rate of $6.50 per hour. Plaintiff also earned between $25.00 to $35.00 each week for two (2) or three (3) wrecker calls.
3. Plaintiff never received a payroll check but was paid by Herbert Kelly, owner of defendant-employer, in cash. Plaintiff's personal records for 1996 and 1997 were destroyed as a result of hurricanes in 1998.
4. Defendant-Carrier initially paid temporary total disability compensation to plaintiff pursuant to a Form 60, which indicated plaintiff's average weekly wage as $260.00, which yielded a weekly compensation rate of $173.34. Subsequently, the Industrial Commission determined plaintiff's average weekly wage based upon the submitted Form 22 to be $180.60, which yielded a compensation rate of $120.41 and defendants began paying this amount in October 2000. However, based upon tax returns submitted by the parties, the Full Commission finds that plaintiff's average weekly wage was $295.00 per week, yielding a compensation rate of $196.67.
5. On September 16, 1997, plaintiff was using a pry bar to change a crankshaft when he felt a pop and severe pain in his abdominal wall.
6. Plaintiff notified Herbert Kelly of this injury and went to Carteret General Hospital where he was diagnosed with a hernia. *Page 4 
7. Plaintiff was referred to Richard Wray, M.D., for hernia surgery. Dr. Wray performed surgery on Friday, September 19, 1997. Plaintiff was released from the hospital the next day, Saturday, September 20, 1997.
8. On Sunday, September 21, 1997, plaintiff developed chest tightness, shortness of breath and wheezing. Plaintiff was taken to Carteret General Hospital and admitted. Plaintiff was diagnosed with pneumococcal pneumonia, the most common type of pneumonia and haemophilus influenza.
9. Upon discharge from the hospital on September 29, 1997, plaintiff was diagnosed with severe obstructive lung disease.
10. On September 29, 1997, defendants prepared a Form 60 admitting the compensability of plaintiff's right groin injury. The Form 60 was filed with the Industrial Commission on December 31, 1997.
11. As of October 1997, plaintiff was treated by Joseph Nutz, M.D., for his pulmonary condition.
12. On or about October 22, 1997, Dr. Wray released plaintiff to return to work from the standpoint of his hernia repair. Plaintiff remained under the care of Dr. Nutz and was not released to return to work because of his pulmonary condition.
13. On October 25, 1997, plaintiff was admitted to the hospital and diagnosed with chronic obstructive pulmonary disease. During this hospital stay, plaintiff began taking prednisone.
14. In November 1997, defendant-carrier referred plaintiff to Ted R. Kunstling, M.D., a Pulmonary Disease specialist with Raleigh Internal Medicine. Dr. Kunstling determined *Page 5 
plaintiff experienced "an exacerbation of chronic obstructive pulmonary disease by a lower respiratory infection, which occurred subsequent to his inguinal hernia repair".
15. Dr. Kunstling initially based his opinion of causal relation on the time sequence of events, because plaintiff had the hernia surgery and then developed pneumonia. By the time of his deposition on April 24, 2002, Dr. Kunstling opined that the cause of plaintiff's lower respiratory infection was the aspiration of oral secretions in the lungs during the hernia surgery. Dr. Kunstling stated that his theory of aspiration during surgery was based on the time sequence of events and that such a complication was unusual. However, during plaintiff's first appointment with Dr. Kunstling on December 4, 1997, Dr. Kunstling himself recorded that there were no aspirations during the course of plaintiff's hernia surgery.
16. Plaintiff had asthma during his childhood and adulthood and used Primatene mist for this condition throughout his lifetime.
17. Plaintiff has been smoking for more than thirty years. Plaintiff began smoking at the age of twelve or thirteen and had smoked two packs per day until 1998. Further, plaintiff continued to smoke during 1999. Plaintiff continued to smoke two packs a day from 2000-2001. Plaintiff also admitted that his doctors advised him to stop smoking prior to his surgery in 1997. Plaintiff testified that he quit smoking approximately five weeks prior to the hearing before the deputy commissioner on February 25, 2002.
18. Gregory Scott Pape, M.D. is the Division Chief of Pulmonary and Critical Care Medicine and Assistant Professor at East Carolina School of Medicine and is certified in three specialties, pulmonology, critical care and internal medicine. Dr. Pape evaluated plaintiff on February 15, 2001. Dr. Pape testified that it was likely that plaintiff did have some chronic obstructive lung disease prior to his hernia surgery based on his history of reactive airway *Page 6 
disease as a child and his significant smoking history, which also increased plaintiff's risk of acquiring a respiratory infection such as pneumonia.
19. Dr. Pape referred to the guidelines of the American Thoracic Society in determining whether plaintiff acquired this pneumonia in the community or in the hospital. Those guidelines indicate that if the pneumonia develops within the first five days of hospitalization, then the pneumonia is more likely to be a community-acquired pneumonia. Hospital patients' oral pharynx and sometimes stomach can become colonized with gram-negative bacteria. A period of time is required for the colonization of these hospital-acquired pathogens after exposure. If there occurs a subsequent aspiration of oral pharyngeal or gastric secretions, then this can lead to the colonization of pathogens or the development of pneumonia. Consequently, the American Thoracic Society's guidelines conclude that a hospital patient who develops pneumonia within the first five days of hospitalization most likely has a pneumonia developed from community-acquired pathogens. Herein, plaintiff developed pneumonia within one day of being released from the hospital and within two days of the hospitalization; therefore, his pneumonia was more likely acquired in the community rather than the hospital setting.
20. Dr. Pape opined that more likely than not plaintiff's subsequent respiratory problems were not related to his hernia surgery. Dr. Pape is of the opinion that plaintiff's respiratory problems resulted from his underlying airway disease and the community-acquired pneumonia. Dr. Pape concludes that the hernia surgery did not cause or contribute to the plaintiff's underlying airway disease or the pneumonia. In fact, Dr. Pape testified that, contrary to the initial interpretation of the x-ray taken just prior to his hospitalization which was read as showing plaintiff's lungs to be clear, it was possible the x-rays showed very early stages of a developing respiratory infection or pneumonia. *Page 7 
21. David A. Schwartz, M.D. is the Chief of Pulmonary Medicine at Duke University Medical Center. Dr. Schwartz first examined plaintiff on February 8, 2001. After a review of a culture of the sputum that plaintiff was coughing on September 21, 1997 on his re-admission to the hospital just after the surgery and an abnormal chest x-ray performed on September 23, 1997, Dr. Schwartz opined that plaintiff had pneumococcal pneumonia, the most common type of pneumonia. Further, after reviewing plaintiff's medical records and the VQ scan from the hospital, Dr. Schwartz testified that plaintiff did not suffer a pulmonary embolism or have thromboembolic disease. Based upon plaintiff's thirty-plus year history of cigarette smoking and his history of asthma, Dr. Schwartz testified that the respiratory and pulmonary problems that plaintiff experienced since September 1997 until the present are more likely than not unrelated to the hernia surgery. Further, Dr. Schwartz testified that plaintiff's current diagnosis of chronic obstructive pulmonary condition was not aggravated by the pneumonia.
22. Though he treated plaintiff prior in time to Dr. Pape and Dr. Schwartz, Dr. Kunstling is not in a better position than these doctors to determine whether plaintiff's hernia surgery is the cause of plaintiff's subsequent pulmonary and respiratory conditions. Dr. Kunstling bases his causation opinion on incorrect facts and on a temporal relation between the hernia surgery and the respiratory problems plaintiff has developed. Dr. Kunstling's opinion is given less weight than that of Dr. Pape and Dr. Schwartz, who both opine that plaintiff's current pulmonary conditions are a result of a combination of his 20-plus year smoking history, his asthma and the community-based pneumonia he acquired prior to his hernia surgery.
23. Plaintiff remained symptomatic despite aggressive treatment in 1998. On April 27, 1998, Dr. Kunstling indicated plaintiff could return to work in jobs that required no strenuous *Page 8 
exertion, no exposure to dust, no fumes or temperature extremes as a result of his pulmonary and respiratory conditions.
24. On May 28, 1998, Dr. Kunstling indicated plaintiff had reached maximum medical improvement as to his asthma and will continue to need treatment for future exacerbations.
25. Dr. Kunstling recommended plaintiff engage in vocational rehabilitation in May 1998.
26. Although plaintiff was offered several jobs such as a cab driver or deliveryman, plaintiff was too symptomatic to undertake gainful employment. Thereafter, Dr. Kunstling has verified plaintiff was unable to accept employment and on May 13, 1999, Dr. Kunstling indicated plaintiff was totally and permanently disabled as result of his pulmonary condition.
27. In April 2000, Joseph McCabe, D.O., an osteopath and general practitioner in Morehead City, began treating plaintiff. He indicated plaintiff's condition worsened and that plaintiff should not be left at home by himself as he was not able to administer his medications.
28. Plaintiff had been relying upon his wife for assistance as his pulmonary condition has worsened, particularly since January 1, 2000. Plaintiff's health condition has taken a toll on plaintiff's wife.
29. Following plaintiff's release to return to work from the standpoint of his hernia repair, defendants continued to pay plaintiff temporary total disability benefits and in excess of $300,00.00 in medical expenses on behalf of plaintiff. During this time period, plaintiff was disabled due to his pulmonary condition and medical expenses incurred were for treatment of the pulmonary condition. *Page 9 
30. The Form 60 filed in this matter on December 31, 1997 admitted compensability of plaintiff's September 18, 1997 right groin injury.
31. On September 26, 2000, defendants filed a Form 33R response to request that claim be assigned for hearing contending that plaintiff's current condition was not causally related to his hernia injury.
32. On January 10, 2002, defendants filed a Form 33R response to request that claim be assigned for hearing contending that the plaintiff's current condition was not related to his original work injury.
33. On January 22, 2002, defendants filed a Form 33 request that claim be assigned for hearing contending that plaintiff's current condition was totally unrelated to the original compensable work injury that involved a hernia and further contending that plaintiff's compensation and medical benefits should be terminated.
34. Even though defendant-carrier voluntarily paid workers' compensation benefits to or on behalf of plaintiff which included treatment for his pulmonary condition, defendants have never asserted to the Industrial Commission that defendants were accepting the pulmonary condition as one of the compensable consequences of the work-related hernia.
35. Dr. Kunstling indicated to defendants in a December 4, 1997 letter and a May 28, 1998 report that there was a causal relationship between the hernia repair surgery and plaintiff's pulmonary condition.
36. Plaintiff asserts that he has detrimentally relied on defendants' payments and failed to file a Form 18, Notice of Accident to Employer.
37. Plaintiff was not harmed or prejudiced in any way by defendants' voluntary payment of workers' compensation benefits for the pulmonary condition. *Page 10 
38. Plaintiff suffered no detriment either substantively or procedurally as a result of defendants' payment of workers' compensation benefits for the pulmonary condition.
39. Plaintiff was able to continue to pursue his workers' compensation claim for the pulmonary condition while receiving payment of benefits. Plaintiff's claim failed based only upon the medical testimony provided by the parties. The Full Commission determined by Opinion and Award of January 30, 2004 that the greater weight of the credible medical evidence in the record supported defendants' position that plaintiff's pulmonary condition was not related to the accepted right groin injury.
40. Plaintiff's estoppel argument is not well taken. Since plaintiff's failure to file a Form 18 in these circumstances is not the issue, there is no detrimental reliance. Plaintiff is not asserting estoppel regarding plaintiff's failure to file notice of injury, but is asserting estoppel in regards to defendants' right to litigate the compensable consequences of the right groin claim.
41. Aside from lack of harm from the voluntary payment of benefits for the pulmonary condition, plaintiff actually received a benefit from the voluntary payment in excess of $300,00.00 in medical benefits and from the significant amount of disability benefits. The Full Commission determined that these payments were not owed by defendants. Defendants have not sought, and represent that they do not seek, to be reimbursed for the benefits which have already been paid.
42. After former Deputy Commissioner Jones filed the original Opinion and Award on July 31, 2002, plaintiff appealed to the Full Commission and later filed a Form 44 Application for Review and Brief. Nowhere in plaintiff's Form 44 or Brief did he raise the issue of the Deputy Commissioner's failure to address the estoppel issue. Nowhere in plaintiff's Form 44 or *Page 11 
Brief to the Full Commission did plaintiff contend that estoppel would be an alternative theory of recovery.
43. There were substantial questions of both law and fact in this matter and the defense of this action was reasonable.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On September 16, 1997, plaintiff sustained a compensable injury by accident, arising out of and in the course of his employment with defendant-employer when he sustained a hernia. N.C. Gen. Stat. § 97-2(6).
2. As result of his compensable injury by accident, plaintiff is entitled to temporary total disability from September 17, 1997 until October 22, 1997, the date plaintiff was released to return to work following his hernia surgery. This compensation should be paid based upon an average weekly wage of $295.00 yielding a compensation rate of $196.67 per week. N.C. Gen. Stat. § 97-29.
3. Plaintiff has received compensation from defendant-carrier, although at a lesser rate ($120.41) than that to which plaintiff is herein determined to be entitled. Therefore, plaintiff is entitled to payment by defendants of the difference between the rate of compensation paid and the rate to which plaintiff is entitled. Plaintiff is also entitled to an additional 10% late payment penalty on amount owed by defendants. N.C. Gen. Stat. §§ 97-18(g), 97-29. Defendants shall receive a credit for all compensation that has been paid to date. N.C. Gen. Stat. § 97-42. *Page 12 
4. An award of benefits cannot stand if "there is no expert medical testimony tending to establish a causal relationship between the work related accident and the disability for which compensation is sought."Click v. Pilot Freight Carriers, Inc., 300 N.C. 164 at 167,265 S.E.2d 389, 391 (1980). "Could or might" expert testimony is insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation. Young v. Hickory Business Furniture, 353 N.C. 227 at 233,538 S.E.2d 912 at 916 (2000). Dr. Kunstling's opinion concerning the causal relation between plaintiff's hernia operation and his pulmonary condition is based on speculation concerning the temporal relationship of the two events rather than medical evidence. Further, his later opinion based on an aspiration theory is faulty. Even his own office notes, which were taken closer in time to the actual events, record there was no aspiration during the hernia surgery. Thus, Dr. Kunstling's opinion is given less weight than that of Dr. Pape and Dr. Schwartz. Consequently, based on the greater weight of the competent medical evidence, plaintiff's pulmonary condition is not a result of plaintiff's hernia surgery and therefore is not compensable. N.C. Gen. Stat. § 97-2(6); Sims v. Charmes / Arby's Roast Beef, 142 N.C. App. 154 (2001).
5. Plaintiff's hernia surgery did not materially aggravate or exacerbate plaintiff's pre-existing pulmonary and respiratory condition.Mitchell v. Fieldcrest Mills, Inc., 84 N.C.App. 661, 353 S.E.2d 638
(1987).
6. Defendants are not estopped from asserting that plaintiff's pulmonary condition is not a result of plaintiff's hernia surgery and therefore is not a compensable consequence of the work-related injury.Whitacre Partnership v. Biosignia, Inc., 358 N.C. 1, 591 S.E.2d 870
(2004).
7. In the discretion of the undersigned, the principles of estoppel, whether equitable, judicial or otherwise, do not apply to the facts of this case. Whitacre Partnership v. Biosignia, Inc., *Page 13 358 N.C. 1, 591 S.E.2d 870 (2004). In using our discretion not to apply the principles of estoppel to this case, the undersigned are also influenced by public policy considerations. If defendants in workers' compensation cases are prevented from contesting the compensable consequences of an accepted claim, after some such benefits had been paid for the contested condition, then workers' compensation insurance carriers and employers are going to be reluctant to pay for any condition where there is the slightest question as to whether it may be related. This would result in a denial of numerous claims and would result in increased litigation. Employers and carriers should be encouraged to pay these benefits without fear that such payment will be used against them later to prevent them from contesting that a certain condition is a compensable consequence of the accepted injury. Applying the principles of estoppel to such situations would not be good public policy for this State.
8. In the alternative, even if estoppel principles should apply to this case, plaintiff abandoned the estoppel ground for appeal when he failed to state that ground in either his Form 44 Application for Review or his Brief to the Full Commission. By abandoning this ground for appeal, plaintiff cannot now be heard on the estoppel issue. The Full Commission inadvertently, and in error, recited the issues as they had been before the Deputy Commissioner even though plaintiff did not raise this estoppel issue on his appeal to the Full Commission. Rule 701(2) (3), Workers' Compensation Rules of the North Carolina Industrial Commission.
10. This claim involved substantial questions of both law and fact and the hearing of this matter was not unreasonably defended, and therefore no attorney's fees should be assessed pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * * *Page 14 
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. For his total disability resulting from his hernia surgery, plaintiff is entitled to total disability compensation at a rate of $196.67 for the period from September 17, 1997 until October 27, 1997. Plaintiff has received compensation from defendant-carrier, although at a lesser rate than that to which plaintiff is entitled. Therefore, defendants shall pay plaintiff the difference between the compensation paid and that which was due. In addition, defendants are entitled to a credit for compensation paid to plaintiff.
2. Plaintiff's claim for compensation for his pulmonary and respiratory illness is hereby DENIED.
3. Plaintiff's estoppel claim is hereby DENIED.
4. An attorney's fee of twenty-five percent (25%) of the amounts due plaintiff under this Award is hereby approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff under Paragraph 1 of this Award and shall be paid directly to plaintiff's counsel.
5. Each side shall bear its own costs.
This the 16th day of November, 2006.
S/ _______________ DIANNE C. SELLERS COMMISSIONER
 CONCURRING: *Page 15 
 S/ __________________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER *Page 16